UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | Case No. 3:19-cr-00026-LRH-WGC |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| JOSEPH JEANNETTE, | |
| Defendant. | |

Before the Court are two motions filed by Defendant Joseph Jeannette ("Jeannette"): (1) a motion to sever (ECF No. 212); and (2) a motion to suppress (ECF No. 213). The government filed oppositions to both motions (ECF Nos. 217, 218), to which Jeannette replied (ECF Nos. 219, 220). For the reasons contained in this Order, the Court denies the motion to sever and denies the motion to suppress.

**I.    BACKGROUND**

There are distinct factual backgrounds important to both motions. Each is described separately.

**A. Motion to Sever**

On May 23, 2019, Jeannette was charged in a thirteen-count indictment with one count of Conspiracy to Possess with Intent to Distribute and to Distribute Oxycodone and Hydrocodone in violation of 21 U.S.C. § 841(a)(1). ECF No. 1. The other twelve counts relate to conduct committed by six other defendants—of which four have pled guilty pursuant to plea agreements with the government. *See* ECF Nos. 131, 173, 177, and 189. In sum, it is alleged that Jeannette would accept unlawfully prescribed substances from co-defendant Math, and then would give the substances to co-defendant Motley to distribute in the Reno area. ECF No. 124, at 3–4. Jeannette seeks a separate trial from the other co-defendants because he maintains a joint trial would be prejudicial to his defense and the outcome of the case. ECF No. 212.

///

### B. Motion to Suppress

On May 24, 2019, a day after Jeannette's indictment, agents with the Federal Bureau of Investigation ("FBI") conducted a post-arrest interview. The agents video-taped the entire interview. *See* ECF No. 219, DVD Video Recording Interview of Jeannette ("Interview"). At the outset of the interview, agents gave Jeannette a cup of coffee because he stated that he had recently taken a sleeping pill. *Id.* at 0:00–1:00. Jeannette was advised of his rights and he signed a written *Miranda* waiver. *Id.* at 3:00–4:30.

Most of the interview was largely cordial and Jeannette provided the agents clear and calm answers. However, as the interview wrapped up, the agents stated that this would be the first and last time they would speak with Jeannette, and if he wanted to cooperate and divulge pertinent information, now was the time. *Id.* at 1:24:00–1:24:40. The agents then asked Jeannette to nod in the affirmative if he had "…ever given any pills—ever given oxy or any other prescribed medication to Motley?" *Id.* at 1:24:40–1:26:00. Jeannette nodded in the affirmative, and the agents then orally confirmed that Jeannette was responding in the affirmative. *Id.* The agents stated that "was the best decision he made all morning," and Jeannette subsequently invoked his right to counsel. *Id.* at 1:26:00–1:26:24.

On February 3, 2021, Jeannette filed a motion to suppress his statement to the FBI on the grounds that it was involuntary and would be unfairly prejudicial. ECF No. 213.

## II.   LEGAL STANDARD

### A. Motion to Sever

The Federal Rules of Criminal Procedure permit the Court to order separate criminal trials or "provide any other relief that justice requires" if joinder "appears to prejudice a defendant or the government." FED. R. CRIM. P. 14(a). The United States Supreme Court has clarified that the rule "does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro v. U.S.*, 506 U.S. 534, 538–39 (1993) (citations omitted); *see also U.S. v. Vasquez-Velasco*, 15 F.3d 833, 846 (9th Cir. 1994) ("Rule 14 sets a high standard for a showing of prejudice.")

///

When assessing the prejudicial nature of joinder, of most "importance is whether the evidence as it relates to the individual defendants is easily compartmentalized." *Vasquez-Velasco*, F.3d at 846. If the evidence can be distinguished, "…less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539 (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *see also United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980) ("The prejudicial effect of evidence relating to the guilt of codefendants is generally held to be neutralized by careful instruction by the trial judge.").

**B. Motion to Suppress**

Waiver of one's *Miranda* rights must be "made voluntarily, knowingly, and intelligently." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A statement is voluntary if it "is the product of a rational intellect and a free will." *Brown v. Howell*, 644 F.3d 969, 979 (9th Cir. 2011). The government must prove that a confession is voluntary, and it must be by a preponderance of the evidence. *J.D.B. v. N. Carolina*, 564 U.S. 361, 269 (2011); *United States v. Jenkins*, 958 F.2d 934, 937 (9th Cir. 1991) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)). In evaluating voluntariness, courts look to the totality of the circumstances surrounding the statement and whether "the government obtained the statement by physical or psychological coercion or by improper inducement…" *United States v. Male Juvenile*, 280 F.3d 1008, 1022 (9th Cir. 2002). And while courts may not admit statements of an intoxicated defendant that lack "rational intellect," *United States v. Kelly*, 953 F.2d 562, 564 (9th Cir. 1992), a statement is not per se involuntary because the defendant is intoxicated. *See United States v. Heller*, 551 F.3d 1108, 112–13 (9th Cir. 2009) (holding that defendant's confession was voluntary despite being under the influence of codeine); *see also Pollard v. Galaza*, 290 F.3d 1030 (9th Cir. 2002) (finding that even though defendant was "groggy" during his interrogation, his statements were nevertheless voluntary).

**III.    DISCUSSION**

The substance of each motion is addressed separately.

///

///

**A. Motion to Sever**

Jeannette asserts that by being tried with his co-defendants, there is a risk that jurors will not be able to make a reliable judgment about his innocence or guilt. Specifically, Jeannette argues that (1) because he was charged with only one count of thirteen, jurors will be unable to compartmentalize the evidence against him versus his co-defendants, and that the "spillover" effect of the evidence will prejudice his defense; and (2) his counsel does not have sufficient knowledge of the co-defendants' defense theories and asserts that they might be "mutually exclusive."[1] Each argument is addressed separately.

First, as to the evidentiary argument, Jeannette has not demonstrated that potential spillover will "clear[ly], manifest[ly], or undu[ly] prejudice" him at a joint trial. *U.S. v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996). Even if the bulk of the trial evidence is targeted against his co-defendant Motley, the Court is confident that proper jury instructions will allow the jury to compartmentalize the evidence against the separate defendants. *See Escalante*, 637 F.2d, at 1201. This case is not so complicated that a jury will be unable to differentiate between defendants and the corresponding evidence associated with each. The jury will understand that the government must produce specific evidence for each defendant, and the jury will not ignore instructions requiring separate consideration to each defendant. As such, absent specific details of prejudice, Jeannette's motion is too speculative and fails to "demonstrate the insufficiency of limiting instructions given by [a] judge." *United States v. Nelson*, 137 F.3d 1094, 1108 (9th Cir. 1998) (quoting *United States v. Joetzki*, 952 F.2d 1090, 1094 (9th Cir. 1991)).

Second, Jeannette has not established that the defenses of his co-defendants are likely to be mutually exclusive. To be entitled to severance based on the mutually antagonistic nature of defense theories, "a defendant must show that the core of the codefendants defense[s] is so irreconcilable with the core of his own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant." *Throckmorton*, F.3d at 1072. Here, Jeannette only

---

[1] Jeannette has also alerted the Court of potential *Bruton* issues if a co-defendant's confession is admitted into evidence but not subject to cross-examination. ECF No. 212 at 8. At this juncture, the Court will not assume *Bruton* issues are present unless Jeannette provides the Court specific evidence that confirm his notice. As such, the Court will not grant him leave to amend this motion until he establishes good cause that *Bruton* issues are in fact present.

4

assumes that his defense theory will be antagonistic to that of his co-defendants. *See* ECF No. 212 at 7 ("…as trial draws near, it is realistic to expect as defenses develop they could be mutually exclusive, requiring severance) (citations omitted). Jeannette has not provided the Court any specific details or evidence as to why his defense theory will be "irreconcilable" with that of Motley's. Without more, the Court cannot assume on mere conjecture that the defense theories are antagonistic.

Therefore, because Jeannette has failed to demonstrate, with any specificity, that joinder will unduly prejudice him at trial, the Court denies the motion to sever.

**B. Motion to Suppress**

The Court next considers Jeannette's argument that he was too intoxicated to provide a voluntary statement to the federal agents because he took a prescribed sleeping pill before the interrogation. Specifically, Jeannette argues that his sleeping medication—Zolpidem—"is well-known to cause people who are awake but under its influence to not recall what they are doing and to experience disinhibition." ECF No. 221 at 1. Therefore, according to Jeannette, there is no way to determine whether his affirmative head nod was the product of rational intellect and free will.

Upon a review of the video-taped interview—which occurred after Jeannette signed a *Miranda* waiver—the Court is confident that Jeannette demonstrated the ability to fully grasp the situation he was in, as well as discern the consequences of answering the questions asked of him. For instance, despite taking the sleeping pill, Jeannette was completely coherent in recounting his life as a professional gambler and his relationships with the co-defendants. Additionally, there are various times during the interrogation where Jeannette refuses to provide the agents information that may implicate him in the alleged conspiracy. *See,* e.g., Interview at 51:00–52:15 (stating that he was going to wait to see the evidence before cooperating); *Id.* at 52:30–53:00 ("I would like to listen to a recording before I would answer anything like that."); *Id.* at 1:21:00–1:23:00 ("…there's clearly information there, and I am going to protect myself.") Therefore, Jeannette demonstrated that he had the ability to refuse to answer the agents' final question but chose not to. *See United States v. Banks*, 282 F.3d 699, 706 (9th Cir. 2002) (a defendant's confession made under the

influence of drug or alcohol is still voluntary if it is "the product of rational intellect and a free will.") Based on this, the Court finds that Jeannette's admission to the federal agents was voluntary.

Lastly, the court considers Jeannette's argument that the statement is unduly prejudicial. Federal Rule of Evidence 403 provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Jeannette argues that since the agents did not specify in their question when, where, and how much Oxycodone and Hydrocodone Jeannette gave Motley, then his head nod in the affirmative does not "nail down charged acts" for a trier of fact and is therefore too speculative and prejudicial.

The Court finds that Jeannette's statement is not substantially outweighed by the danger of unfair prejudice. Jeannette's affirmative nod was at the end of a nearly ninety-minute interrogation regarding his relationship with Motley and the other co-defendants. It appears clear that Jeannette was referring to the charged conspiracy at hand when he made the statement, and it is therefore relevant. Moreover, it certainly would not be confusing or overly prejudicial for a trier of fact to evaluate the statement's credibility in relation to the rest of the trial evidence. Jeannette has not shown how admission of the evidence is outweighed by unfair prejudice to him as Rule 403 requires.

**IV.   CONCLUSION**

IT IS THEREFORE ORDERED that Jeannette's motion to sever (ECF No. 212) is **DENIED**.

IT IS FURTHER ORDERED that Jeannette's motion to suppress (ECF No. 213) is **DENIED**.

IT IS SO ORDERED.

DATED this 30th day of March, 2021.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE