**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 29 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> MYRON MOTLEY, <br><br> Defendant-Appellant. | No.  21-10296 <br><br> D.C. Nos. <br> 3:19-cr-00026-LRH-WGC-1 <br> 3:19-cr-00026-LRH-WGC <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued March 10, 2023
Submitted December 29, 2023
Las Vegas, Nevada

Before: GRABER, CLIFTON, and BENNETT, Circuit Judges.

Myron Motley appeals his conviction and sentence arising from his

involvement in a conspiracy to distribute oxycodone and hydrocodone.[1]  We have

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[1] In a concurrently filed opinion, we address Motley's challenge to the district court's order declining to suppress evidence obtained from two tracking warrants and determining that the wiretap warrant was necessary and was supported by probable cause.  We address his remaining arguments in this disposition.

jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  We affirm Motley's conviction, affirm his sentence in part and vacate it in part, and remand for limited resentencing consistent with this disposition.

      1.      Motley waived his Speedy Trial Act claim because he never moved to dismiss before trial.  *See* 18 U.S.C. § 3162(a)(2); *United States v. Tanh Huu Lam*, 251 F.3d 852, 860–61 (9th Cir.), *as amended on denial of reh'g and reh'g en banc sub nom. United States v. Lam*, 262 F.3d 1033 (9th Cir. 2001).

      We review Motley's speedy trial claim under the Sixth Amendment for plain error, as he raises it for the first time on appeal.  *See United States v. Sykes*, 658 F.3d 1140, 1149 (9th Cir. 2011).  "In assessing the merits of a claimed violation of the Sixth Amendment speedy trial right, courts are to conduct a balancing test involving four separate factors: the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  *Tanh Huu Lam*, 251 F.3d at 855.

      On balance, the factors do not support the claim.  Even assuming that the government should bear the responsibility for the COVID-related delay, the "focal" factor—reason for the delay—is neutral because Motley and his codefendants were also responsible for a substantial amount of the two-year delay.  *United States v. King*, 483 F.3d 969, 976 (9th Cir. 2007).  Further, the remaining factors do not weigh heavily in favor of a violation.  The two-year delay was not

excessive. *See id.* Motley did not consistently assert his speedy trial rights. *See id.* Finally, Motley's claim of prejudice is weak, as he provides only general assertions that he experienced anxiety and concern from his incarceration during the COVID-19 pandemic and fails to show that the delay prejudiced his defense.

2. Even assuming that de novo review applies, as Motley urges, his *Batson* claim fails. *See Batson v. Kentucky*, 476 U.S. 79 (1986). Because the first step of *Batson*'s three-step burden shifting framework is not at issue, we analyze only the second and third steps. *See Hernandez v. New York*, 500 U.S. 352, 358–59 (1991) (plurality opinion). As to the second step, the government offered race-neutral reasons for striking the alternative juror: he was young (twenty-two) and unemployed, and he lacked a significant work history. Moving to step three, Motley fails to show purposeful discrimination. Given the juror's characteristics, the prosecutor reasonably could have believed that the juror lacked the maturity and experience to serve responsibly on a jury. Nor did the prosecutor challenge three other Latino or Hispanic jurors, and Motley's comparative analysis fails to show pretext. These circumstances bolster our conclusion that Motley has not proved purposeful discrimination.[2] *See Palmer v. Estelle*, 985 F.2d 456, 458 (9th

---

[2] To the extent that Motley claims that the trial court found the government's reasons were pretextual, we disagree. At best, the transcript reflects that the court thought that they were not *Batson*-prohibited reasons or may have questioned the strength of the reasons.

3

Cir. 1993); *United States v. Hernandez-Garcia*, 44 F.4th 1157, 1167 (9th Cir.), *cert. denied*, 143 S. Ct. 508 (2022).

3. The government argues that plain error review applies to Motley's sufficiency-of-the-evidence challenges because, after the close of all the evidence, he failed to renew his motion for judgment of acquittal under Federal Rule of Criminal Procedure 29. But even assuming that de novo review applies, as Motley argues, his insufficiency-of-the-evidence challenges fail. A conviction must be upheld if, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Contrary to Motley's position, the prosecution could prove the requisite mens rea under 21 U.S.C. § 841(a)(1) by showing that Motley "knew the identity of the substance[s] he possessed." *McFadden v. United States*, 576 U.S. 186, 192 (2015). There was more than sufficient evidence supporting the mens rea element. The doctor involved in the conspiracy, Dr. Math, wrote Motley many prescriptions for oxycodone. Motley provided a coconspirator with a prescription for hydrocodone written by Dr. Math and, after filling the prescription, the coconspirator gave Motley the prescription bottle so that Motley could take his share of the pills. The label on the bottle explained that the substance contained "hydrocod/acetam," short for hydrocodone and acetaminophen. Based on this

4

evidence, a rational juror could have found that Motley knew the substances were oxycodone and hydrocodone.

We also reject Motley's claim that the evidence was insufficient to prove a conspiratorial agreement to possess with intent to distribute, or to distribute, the controlled substances. Motley obtained monthly prescriptions for large amounts of oxycodone or hydrocodone from Dr. Math in his own name *and* in his coconspirators' names. Motley paid Dr. Math between $600 and $800 for each prescription, and Dr. Math knew that Motley and his coconspirators were selling the pills and knew that he was vital to the conspiracy. During a recorded phone call between Motley and a coconspirator, they discussed how many pills the coconspirator had received, who should sell the pills, and the exchange of money. Another coconspirator testified that Motley would take a portion of her pills to resell. Viewing all this evidence in the government's favor, a rational juror could have found that Motley agreed with his coconspirators to possess with intent to distribute or to distribute oxycodone and hydrocodone. *See United States v. Loveland*, 825 F.3d 555, 557 (9th Cir. 2016) (noting that a conspiratorial agreement can be proved by circumstantial evidence).

4.   Motley's jury instruction challenges are unavailing. Under *McFadden*, the district court correctly refused to instruct the jury that the government had to prove that Motley knew the substances were listed as controlled

substances. 576 U.S. at 192. A multiple conspiracies instruction was unnecessary because Motley was the only defendant at trial, and so there was no risk of spillover of guilt from a codefendant. *See United States v. Liu*, 631 F.3d 993, 1000 (9th Cir. 2011). The evidence also did not support a multiple conspiracies defense because the evidence showed that Motley was a key participant in the charged conspiracy, rather than a person involved only in a separate uncharged conspiracy. *See United States v. Moe*, 781 F.3d 1120, 1127 (9th Cir. 2015). Finally, the court instructed the jury that it had to find that "there was a plan to commit at least one of the crimes alleged in the indictment as an object or purpose of the conspiracy *with all of you agreeing* as to the particular crime which the conspirators agreed to commit," (emphasis added), and that Motley "joined in the agreement." These instructions amounted to a specific unanimity instruction, as they informed the jury that it had to agree on which conspiracy supported the conspiracy conviction.

The indictment was not improperly amended by the jury instructions. "For a constructive amendment to inhere, jury instructions must 'diverge materially' from the indictment and evidence must have been 'introduced at trial that would enable the jury to convict the defendant for conduct with which he was not charged.'" *United States v. Alvarez-Ulloa*, 784 F.3d 558, 570 (9th Cir. 2015) (quoting *United States v. Ward*, 747 F.3d 1184, 1191 (9th Cir. 2014)). Although the instruction on the conspiracy charge omitted the indictment's text that the conspiracy was "not

6

for a legitimate medical purpose and not in the usual course of professional practice," the court gave, verbatim, a separate instruction proposed by Motley:

> A person who works with or for a pharmacy or a physician may not be convicted when he or she distributes or dispenses controlled substances in good faith for a legitimate medical purpose and in the usual course of professional practice.
>
> A controlled substance is distributed or dispensed by a physician or pharmacist in the usual course of his or her professional practice and, therefore, lawfully, if the substance is distributed or dispensed by him or her in good faith in medically treating a patient.
>
> When you consider the good faith defense, it is the defendant's belief that is important. It is the sincerity of his belief that determines if he acted in good faith.
>
> If the defendant's belief is unreasonable, you may consider that in determining his sincerity of belief, but an unreasonable belief sincerely held is good faith.

Considering this instruction, which tracks the relevant wording in the indictment, the jury instructions did not "diverge materially" from the indictment. *Id.*

5. In sentencing Motley, the district court did not clearly err in finding that Motley was an organizer or leader. *See United States v. Avila*, 95 F.3d 887, 889 (9th Cir. 1996). Considering all the evidence, the district court reasonably concluded that Motley exercised control over or organized others, as he arranged for, bought, and obtained his coconspirators' prescriptions. *See id.* And after the prescriptions were filled, Motley took or acquired large amounts of the pills so that he could resell them.

6. Nothing in the record suggests that the district court failed to appreciate its discretion to vary from the Sentencing Guidelines on policy grounds under *Kimbrough v. United States*, 552 U.S. 85 (2007). Motley points to a single statement made by the district court: "[T]he Court's policy, of course, [is] to be guided in every case by the sentencing guidelines." But that statement accurately describes the Guidelines' purpose. *See Beckles v. United States*, 580 U.S. 256, 263 (2017) ("[The Guidelines] *guide* the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." (emphasis added)).

7. We reject Motley's challenges to the district court's total converted drug weight calculation. Contrary to Motley's argument, the district court did not improperly shift the burden by requiring him to prove a weight calculation. The record shows that the court found that the government had met its burden and then simply permitted Motley to challenge the court's finding.

Further, the court's calculation was not clearly erroneous. *See United States v. Alvarez*, 358 F.3d 1194, 1212 (9th Cir. 2004). Based on the evidence—including that Dr. Math regularly delivered the coconspirators' prescriptions to Motley directly and that Motley paid Dr. Math for his coconspirators' prescriptions—the court reasonably concluded that the government had proved by a preponderance that all the pills prescribed by Dr. Math to Motley and his coconspirators during the relevant period were within the scope and in furtherance

of the conspiracy and reasonably foreseeable. *See id.*; U.S. Sent'g Guidelines Manual § 1B1.3(a)(1)(A)–(B) (U.S. Sent'g Comm'n 2018) [hereinafter U.S.S.G.].

8. The district court did not impose a substantively unreasonable sentence. The record shows that the court considered the required factors under 18 U.S.C. § 3553(a) in a "rational and meaningful" manner. *United States v. Ressam*, 679 F.3d 1069, 1089 (9th Cir. 2012) (en banc) (quoting *United States v. Tomko,* 562 F.3d 558, 568 (3d Cir. 2009) (en banc)). Further, the sentence of 179 months fell within the Guidelines range. *See United States v. Carty*, 520 F.3d 984, 988 (9th Cir. 2008) (en banc) ("[W]e recognize that a correctly calculated Guidelines sentence will normally not be found unreasonable on appeal."). Considering the totality of the circumstances, the district court did not abuse its discretion by imposing a substantively unreasonable sentence. *See id.* at 993.

9. The district court did not orally pronounce the discretionary "standard" supervised release conditions set forth in U.S.S.G. § 5D1.3(c), but they appear in the written judgment. Under our recent decision in *United States v. Montoya*, 82 F.4th 640, 644–45 (9th Cir. 2023) (en banc), this was error. Thus, as in *Montoya*, we vacate the conditions of supervised release that were referred to as the "standard conditions" in the written judgment and remand "so that the district court can cure its error by orally pronouncing any of the standard conditions of supervised release that it chooses to impose and by giving [Motley] a chance to

9

object to them." *Id.* at 656. Because the circumstances here are materially indistinguishable from those in *Montoya*, *see id.* at 645, we reject Motley's contention that we should simply strike the standard conditions. *See* Dkt. No. 51.

10. The district court plainly erred by imposing Special Condition 2, which improperly delegated to the probation officer the authority to decide whether Motley must participate in outpatient substance abuse treatment. Like the error in *United States v. Nishida*, the district court here delegated a decision that goes to the "nature or extent" of the punishment imposed. 53 F.4th 1144, 1152–53 (9th Cir. 2022). Under *Nishida*, Motley has shown that he is entitled to plain-error relief. *See id.* We therefore vacate Special Condition 2 and remand for the district court to reconsider that condition. *See Montoya*, 82 F.4th at 656 (noting that we have discretion whether to "vacate only a particular portion of the supervised release sentence").

**CONVICTION AFFIRMED; SENTENCE AFFIRMED IN PART AND VACATED IN PART; and REMANDED.**